No. 22229.

NANCY E. ADKINS, ADMINISTRATRIX OF THE ESTATE OF CARMEN A. GASTON, FORMERLY CARMEN A. JACOBSON, DECEASED *v.* THE DENVER DRY GOODS COMPANY, A COLORADO CORPORATION.

(448 P.2d 957)

Decided January 13, 1969.

FRICKEY & MORRISSEY, MYRICK, CRISWELL & BRANNEY, JOHN A. CRISWELL, for plaintiff in error.

SHELDON and NORDMARK, GEORGE M. ALLEN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

CARMEN A. GASTON, formerly Carmen A. Jacobson, now deceased, was plaintiff in the trial court and will be so referred to here. This was an action for damages resulting from a fall by plaintiff in the defendant's down-town store. At the conclusion of the plaintiff's case, the defendant moved for a directed verdict. The court reserved its ruling on this motion until after completion of the trial. The jury found in favor of the plaintiff and awarded her damages in the amount of $26,000. The court entered judgment for the defendant notwithstanding the verdict.

Commencing in 1964, during the Christmas buying season and on other special occasions, the defendant installed a red carpet down its center aisle extending nearly from 15th Street to 16th Street. This was about

6 feet in width, its edges being a foot or two from the display cases on each side of the aisle. The carpet was fastened to the terrazzo floor with special tape, about 6 inches wide, gummed on each side. Seams were entirely so taped. Portions of the edges were fastened to keep the carpet from moving sideways.

The plaintiff, a lady of 74 years, with her daughter, entered the store from the 16th Street side and proceeded along the main aisle. The plaintiff stopped to look at some articles in a display case in the men's department on the right side of the aisle. (Directions used here of left and right are of one proceeding down the aisle from 16th Street to 15th Street.) At or in the vicinity of this location there was a seam in the carpet. The daughter went across the aisle to the left to examine articles on display in the women's lingerie department. The plaintiff was standing either on the carpet near its right border or partially on and off the carpet. The daughter spoke to her mother. At this moment, either the plaintiff had turned and started toward the daughter or, at the time the latter spoke, the plaintiff turned to proceed in her direction. Plaintiff fell, and sustained a serious and painful injury.

The plaintiff testified that as she stopped at the men's display case she felt something under her shoe but paid no attention to it. She further stated: "Like a little ball, or something. You know, like a wrinkle, or something. I don't know, I didn't pay attention. I tell you the truth, I didn't pay attention." She testified that when she turned or when she was going to turn, "the carpet hold on my shoe * * *. That carpet grabbed my shoe and I fall so quick that I didn't expect it. * * * The carpet grabbed the shoe and knocked me down."

The plaintiff's daughter testified:
"I had turned completely around and was walking, starting to walk towards my mother, when I saw her foot, her shoe had caught the rug, the carpet, this red carpet, about an inch, and it happened so fast, she flipped over

on her left side. * * * It was her right shoe * * * at the ball of the shoe, it caught the carpet, about an inch. That is all I saw, was the red carpet off the floor about an inch, and it caught about the ball of her shoe. * * * The only thing I saw as I was coming towards her was when her foot had caught the carpet about an inch, and she flipped right away. It happened so fast, just like that."

This testimony of the plaintiff and her daughter, and other testimony by them of the same import, constitute all that we have been able to find in the transcript of evidence purporting to show that there was a defect or dangerous condition of the carpet or floor which caused the plaintiff to fall. There was no evidence of any crease, wrinkle, loose edge of carpeting or other defect existing prior or subsequent to the accident. Defendant's nurse testified that after someone fell in the store she examined the floor area in the vicinity, as she did in this case. However, we have been unable to find any testimony of any other accidents connected with the carpeting.

There is some question as to whether the evidence was sufficient to support an inference that there was a condition present which might subject the defendant to liability. However, there is no necessity of making a determination in this particular.

■■■ In order for the plaintiff to prevail in an action such as this, it must be shown that the defendant knew or by the exercise of reasonable care should have discovered the condition causing the injury and should have realized that it involved an unreasonable risk of harm to invitees. Restatement (Second) of Torts § 343 (1965). We have found nothing in the record which indicates that the defendant had notice or should be charged with notice of a dangerous condition. There is a marked contrast between the situation here and that in *Denver Dry Goods Company v. Gettman*, 167 Colo. 539, 448 P.2d 954, announced contemporaneously with this

opinion. In *Gettman*, this same defendant knew that it was snowy, that moisture was being tracked into the store, and that dangerous conditions were thereby being caused. It was pointed out in *Gettman* that *Boyd v. Hubbell*, 155 Colo. 110, 392 P.2d 664 and *Denver Dry Goods Company v. Pender*, 128 Colo. 281, 262 P.2d 257 were distinguishable. However, they are applicable here and are authority for our determination that a directed verdict for the defendant in the instant case was proper, there being no evidence to support the essential element of notice to the defendant.

Judgment affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.