**SAFEWAY STORES, INCORPORATED,**
Petitioner,

v.

**Charles L. SMITH, Jr., Respondent.**

No. 81SC289.

Supreme Court of Colorado,
En Banc.

Jan. 31, 1983.

Anstine & Hill, Arthur H. Anstine, Denver, for petitioner.

Norton Frickey and Associates, P.C., Dan N. Hover, Denver, for respondent.

LOHR, Justice.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Smith v. Safeway Stores, Inc.,* 636 P.2d 1310 (Colo.App.1981), which affirmed the judgment of the Denver District Court awarding damages to the plaintiff, Charles L. Smith, Jr., for injuries sustained when he slipped and fell in a store operated by the defendant, Safeway Stores, Inc. (Safeway). We affirm the judgment of the court of appeals.

On November 7, 1978, the plaintiff was shopping in the defendant's self-service grocery store. While walking down an aisle between two rows of counters stocked with merchandise, he stepped on a substance that witnesses described as looking like hand lotion, and slipped and fell, injuring his back. He brought an action against Safeway, contending that the accident was caused by the defendant's negligence in failing to maintain the premises in a reasonably safe condition or to warn of the unsafe condition of the floor. The case was tried to a jury, which found that Safeway had been negligent and Smith had not been contributorily negligent, and awarded Smith $9,000 as compensation for his injuries. The trial court denied Safeway's motion for judgment notwithstanding the verdict or in the alternative for a new trial, and Safeway appealed. Safeway asserted on appeal that the trial court erred in denying its motion for judgment notwithstanding the verdict because there was no evidence that Safeway had actual or constructive notice of the unsafe condition before the accident and such notice is an essential element of the plaintiff's negligence claim. *See* C.R.C.P. 50(b). Safeway also contended that its alternative motion for a new trial should have been granted because the trial court erroneously refused to receive in evidence a statement that Safeway obtained from Smith three days after the mishap. The court of appeals rejected these claims of error and affirmed the trial court's judgment. We conclude that the court of appeals correctly resolved the issues. We address in turn the notice issue and the question of admissibility of the plaintiff's statement.

I.

A store operator has a duty to his customers to use ordinary care to keep the floors used by them in a reasonably safe condition. *F.W. Woolworth Co. v. Peet,* 132 Colo. 11, 284 P.2d 659 (1955).[1] Unless a

1. Our early cases often emphasize the status of store customers as invitees in discussing the duty of care owed by a storeowner. However, in *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971), we repudiated the approach of basing the nature of a land occupant's duty upon the status of the injured party, holding

that *status* or *classification* of one who is upon the property of another is not to be determinative of the occupant's responsibility or the degree of care which he owes to that person. Rather, the occupant, in the

dangerous condition is created by the operator or its agents,[2] its duty of care is breached only if, after actual or constructive notice, the store operator fails to correct the condition or warn of its existence. *Adkins v. The Denver Dry Goods Co.,* 167 Colo. 545, 448 P.2d 957 (1969); *The Denver Dry Goods Co. v. Gettman,* 167 Colo. 539, 448 P.2d 954 (1969); *Miller v. Crown Mart, Inc.,* 162 Colo. 281, 425 P.2d 690 (1967); *Boyd v. Hubbell,* 155 Colo. 110, 392 P.2d 664 (1964); *F.W. Woolworth Co. v. Peet, supra; Denver Dry Goods Co. v. Pender,* 128 Colo. 281, 262 P.2d 257 (1953).

In *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 494 P.2d 839 (1972), however, we recognized an exception to the requirement of actual or constructive notice when the storekeeper's operating methods "are such that dangerous conditions are continuous or easily foreseeable." *Id.* at 421, 494 P.2d at 840. In that case the plaintiff slipped and fell on a piece of pizza that had fallen to the floor of the defendant's store. The store sold pizza over the counter by the slice on waxed paper sheets. Buyers numbered 500 to 1,000 each day. There were no chairs or tables by the pizza counter, and many customers stood on the terrazzo floor near the pizza counter while consuming their food. As a result, food dropped to the floor with such frequency that porters were sweeping it up continually. The trial court granted a judgment of dismissal at the close of the plaintiff's case, and the Colorado Court of Appeals affirmed, because of the absence of a showing that the storekeeper had actual or constructive notice of the dangerous condition before the accident occurred. We reversed, stating:

> management of his property, should act as a reasonable man in view of the probability or foreseeability of injury to others. A person's status as a *trespasser, licensee* or *invitee* may, of course, in the light of the facts giving rise to such status, have some bearing on the question of liability, but it is only a factor—not conclusive. [citations omitted]. (Emphasis in original).
> *Id.* at 548, 489 P.2d at 314–15.

2. There was no evidence that Safeway or its employees caused the substance to be spilled on the floor.

The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary. Such was the case under the facts of *Woolworth v. Peet,* 132 Colo. 11, 284 P.2d 659 (1955), and *Denver Dry Goods v. Pender,* 128 Colo. 281, 262 P.2d 257 (1953), which the defendant has urged upon us. In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved. *Bozza v. Vornado,* 42 N.J. 355, 200 A.2d 777 (1964).

*Id.,* at 420–421, 494 P.2d at 840.

■ The Colorado Court of Appeals concluded that the *Jasko* exception to the notice requirement is applicable to the present case because "[i]n a self-service grocery operation, the easy access to the merchandise often results in its spillage and breakage.[3] This, along with the fact that a customer's attention understandably is focused on the items displayed rather than on the floor, creates a dangerous condition." 636 P.2d at 1311–12. Finding those risks easily foreseeable, and noting that in *Jasko* we held that if dangerous conditions are either continuous or easily foreseeable the logical basis for the notice requirement disappears, the court of appeals rejected the argument that the trial court should have entered judgment for the defendant notwithstanding

3. The testimony of the store manager, who had 18½ years of experience in Safeway stores, supports the court of appeals' statement that spillage occurs frequently in self-service grocery stores. He acknowledged that it is common for food items to be dropped on the floor by customers and not unusual that substances appear on the floor in different aisles than where they are displayed. The evidence here was that the slippery substance was not among the items shelved along the aisle in which the spillage occurred.

the verdict. This holding is in accordance with well reasoned opinions in other jurisdictions. *See Thomason v. Great Atlantic and Pacific Tea Co.,* 413 F.2d 51 (4th Cir. 1969); *Rhodes v. El Rancho Markets,* 4 Ariz.App. 183, 418 P.2d 613 (1966); *F.W. Woolworth Co. v. Stokes,* 191 So.2d 411 (Miss.1966); *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966); *Bozza v. Vornado, Inc.,* 42 N.J. 355, 200 A.2d 777 (1964); *Forcier v. Grand Union Stores, Inc.,* 128 Vt. 389, 264 A.2d 796 (1970); *Ciminski v. Finn Corporation, Inc.,* 13 Wash.App. 815, 537 P.2d 850 (1975); *Buttrey Food Stores Division v. Coulson,* 620 P.2d 549 (Wyo.1980); *see also* Annot., 85 A.L.R.3d 1000 (1978). We hold that the court of appeals correctly applied the *Jasko* exception to the facts of this case and that the motion for judgment notwithstanding the verdict was properly denied. To the extent that any of our prior cases are to the contrary, we now overrule them.

■ Our holding does not make the operator of a self-service grocery store an insurer against all accidents on the premises. *See Bozza v. Vornado, Inc., supra.* The proprietor is guilty of negligence only if he fails to use reasonable care under the circumstances to discover the foreseeable dangerous condition and to correct it or to warn customers of its existence. We believe, however, that it is unrealistic to require the victim of a fall resulting from a dangerous condition in a self-service grocery store to present evidence of the absence of reasonable care by the storekeeper. *See Forcier v. Grand Union Stores, Inc., supra; Wollerman v. Grand Union Stores, Inc., supra.* The steps the storekeeper took to discover the condition and to correct or warn of it are peculiarly within his own knowledge. As the Supreme Court of New Jersey stated in *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. at 430, 221 A.2d at 515:

> [W]e are satisfied that where a substantial risk of injury is implicit in the manner in which a business is conducted, and on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to

arise or to continue, it would be unjust to saddle the plaintiff with the burden of isolating the precise failure. The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault probably was his.

Therefore, we hold that the plaintiff establishes a prima facie case of negligence when he presents evidence that the nature of the defendant's business gives rise to a substantial risk of injury to customers from slip-and-fall accident, and that the plaintiff's injury was proximately caused by such an accident within the zone of risk. It is then incumbent upon the defendant to produce evidence that it exercised reasonable care under the circumstances. The ultimate decision whether the defendant exercised such care is to be made by the finder of fact. Our holding does not preclude the defendant from advancing and proving any of the conventional defenses available in negligence actions.

II.

We next address Safeway's contention that a new trial should be granted because the trial court erroneously refused to receive in evidence the plaintiff's November 10, 1978, statement, offered by Safeway during cross-examination of the plaintiff. Resolution of this issue requires application of section 13–21–301, C.R.S.1973 (1982 Supp.) to the facts of the present case. Section 13–21–301 provides in relevant part:

> (1) If a person is injured as a result of an occurrence which might give rise to liability and said person is a patient under the care of a practitioner of the healing arts or is hospitalized, no person or agent of any person whose interest is adverse to the injured person, within fifteen days from the date of the occurrence causing the injury, shall:
>
> \* \* \* \* \* \*
>
> (c) Obtain or attempt to obtain any statement, either written, oral, recorded, or otherwise, from the injured patient for

use in negotiating a settlement or obtaining a release except as provided by the Colorado rules of civil procedure.

(2) ... Any statement, written, oral, recorded, or otherwise, which is given by the injured party in violation of this section may not be used in evidence against the interest of the injured party in any civil action relating to the injury.

The November 10, 1978, statement was given within fifteen days of the accident that caused the plaintiff's injury. The plaintiff was not hospitalized at the time. The sole issue upon which the applicability of the statute turns is whether at the time the statement was taken the plaintiff was "a patient under the care of a practitioner of the healing arts."[4] The trial court found that he was, and the evidence and our construction of the statute sustain that finding.

After the accident the plaintiff went directly to a hospital, where he received medication for his pain. The hospital then referred him to a clinic for follow-up medical services. The plaintiff made an appointment at the clinic for a later day, but when he kept that appointment he learned that the clinic treated only job-related injuries. He then sought treatment at another hospital, where he first appeared and was examined by an orthopedic surgeon on November 20, 1978. He returned to that hospital on at least two later occasions in 1978 and was released to return to work in March of 1979.

■ The court of appeals, finding support in *Bolles v. Smith,* 92 N.M. 524, 591 P.2d 278 (1979), construed section 13–21–301 to mean that a person is a "patient under the care of a practitioner of the healing arts" when, even though the care is not continuous, it is provided in good faith and reasonably required. We agree. In *Bolles v. Smith* the New Mexico Supreme Court construed a statute invalidating settlement agreements made while an injured party is under the care of a person licensed to prac-

tice the healing arts, and held that an injured party was under the care of a doctor during the entire three year span in which he made periodic visits to the doctor for treatment of convulsions caused by head injuries incurred in an accident.

■ In construing a statute our task is to discern the intent of the legislature. *E.g., U.M. and S.M. v. District Court of Larimer County,* 631 P.2d 165 (Colo.1981). We must liberally construe all phrases in the statute to effectuate the true intent and meaning of the general assembly. Section 2–4–212, C.R.S.1973 (1980 Repl.Vol. 1B). We believe it clear that the intent of the general assembly in enacting section 13–21–301 was to prevent hasty settlements and to prohibit the evidentiary use of statements made by injured persons before the passage of enough time following an injury to permit the injured party to evaluate his condition carefully. The purpose of the requirement that the injured party be under the care of a practitioner of the healing arts or be hospitalized is to exclude from the protective provisions of section 13–21–301 those situations where no injuries result or where they are so slight as to require only brief medical attention.

■ The fact that an injured party has not placed himself under the care of a particular doctor at the time a statement is made should not be a controlling factor in the statute's application. Here, the defendant sought medical attention immediately after his injury. Although after receiving emergency treatment for pain he did not identify and obtain the services of a specific provider of medical services until November 20, thirteen days after the accident, he was on referral status and promptly made and kept appointments that resulted in a series of regular examinations beginning on November 20. The evidence contains no suggestion that the plaintiff was not diligent in seeking appropriate medical attention or

---

4. Safeway states in its brief, without further development or elaboration, that the plaintiff failed to prove that the November 10, 1978, statement was "for use in negotiating a settlement or obtaining a release." On its face, the

plaintiff's statement does not support Safeway's claim, and we deem further consideration of this issue not warranted in light of the unspecific nature of Safeway's argument.

that the medical services were not provided in good faith or were not reasonably required for treatment of his injuries. Under these circumstances we conclude that section 13–21–301 is applicable to the statement taken from the plaintiff by Safeway three days after his injury and that the trial court properly excluded that statement from evidence.

■ We also agree with the court of appeals that the statute makes no distinction between use of a statement for impeachment and for other purposes. Section 13–21–301 prohibits the use of statements within the statutory ambit "against the interest of the injured party in any civil action relating to the injury." This language admits no distinction between use for impeachment purposes and other uses of the statement.

Judgment affirmed.

DUBOFSKY, J., does not participate.