**TACO BELL, INC., Petitioner,**

v.

**John P. LANNON, Respondent.**

**No. 85SC209.**

Supreme Court of Colorado,
En Banc.

Oct. 5, 1987.

Rehearing Denied Nov. 2, 1987.

Fortune & Lawritson, P.C., Mason, Reuler & Peek, P.C., Lowell Fortune, Denver, for petitioner.

Fogel, Keating and Wagner, P.C., William L. Keating, David R. Struthers, Denver, for respondent.

Robert Palmer, Ronald A. Sarasin, Washington, D.C., for amicus curiae Nat. Restaurant Ass'n.

LOHR, Justice.

This is a negligence case arising from an incident in which the plaintiff, John P. Lannon, was injured by a shot fired by a robber when Lannon tried to leave the premises of the defendant, Taco Bell, Inc. (Taco Bell), during the course of a robbery. In *Lannon v. Taco Bell, Inc.*, 708 P.2d 1370 (Colo.App.1985), the Colorado Court of Appeals reversed a judgment in favor of Lannon and against Taco Bell based on the trial court's failure to instruct the jury on comparative negligence. The court of appeals then addressed the issue of duty because of the likelihood that it will arise again on retrial. The appellate court held that Taco Bell had a legal duty to take reasonable measures to protect its patrons from the consequences of criminal acts on the part of unknown third persons in this case, and further held that the issue of whether it breached that duty by failing to employ one or more armed security guards was properly submitted to the jury. We granted certiorari but limited our review to the issue of duty. We agree with the holdings of the court of appeals with respect to that issue and therefore affirm the judgment of that court.

I.

At approximately 10:30 p.m. on January 28, 1979, the plaintiff, John P. Lannon, entered a Taco Bell restaurant located on East Colfax Avenue in Denver. When the plaintiff approached the service counter, he noticed that the employees were off to one side of the counter and that a man was crouched behind the counter holding a handgun and going through a floor safe. The plaintiff deduced that a robbery was in progress. He then retreated toward the

door, whereupon he encountered another robber apparently acting as a lookout for the robber behind the counter. The plaintiff brushed past the second robber and ran out the door into the Taco Bell parking lot. At that point, the robber behind the counter went toward the door and shot at the plaintiff, hitting him on the ring finger of his left hand. The plaintiff ran to a nearby laundromat and called the police. Police officers arrived within minutes but the robbers had already fled.

The plaintiff filed suit against Taco Bell in Denver District Court, alleging that Taco Bell had a duty to take adequate measures to protect him from the foreseeable criminal acts of third persons and that Taco Bell was negligent in failing to take such measures. The plaintiff also alleged that Taco Bell's negligence was the proximate cause of his injury. In its answer to the plaintiff's complaint, Taco Bell set forth two defenses with respect to the issue of liability: (1) that the plaintiff had failed to state a claim upon which relief could be granted; and (2) that the plaintiff's own sole or contributory negligence was the proximate cause of his injuries. Taco Bell later filed a motion to dismiss the plaintiff's claim, alleging that the plaintiff had failed to state a claim upon which relief could be granted because Taco Bell owed no legal duty to the plaintiff to protect him from the consequences of criminal acts on the part of third persons. The trial court denied Taco Bell's motion to dismiss, and the case proceeded to trial.

At trial, the plaintiff established, in addition to the facts previously set forth, that ten armed robberies had taken place at this same Taco Bell restaurant in the three years prior to the robbery giving rise to this case. One of these armed robberies had occurred only two nights before the robbery during which the plaintiff was injured. Furthermore, Detective William Martin of the Denver Police Department testified, on behalf of the plaintiff, that it was his opinion that this particular Taco Bell restaurant is located in a "high crime area." Detective Martin and two other Denver police officers called by the plaintiff also testified concerning security mea-

sures, including the use of security guards, that could be taken by this kind of restaurant to reduce the possibility of armed robberies. A management employee of a fast food restaurant also located on East Colfax Avenue testified on behalf of the plaintiff concerning that restaurant's practices with respect to hiring armed security guards.

Taco Bell moved for a directed verdict at the close of the plaintiff's case. Taco Bell based its motion on arguments that it had no duty, as a matter of law, to protect its customers from the consequences of criminal acts on the part of unknown third persons and that even if such a duty did exist, any failure on its part to employ armed security guards could not have been the proximate cause of the plaintiff's injuries. The trial court denied the motion.

Taco Bell called Richard Parson, an employee of the Taco Bell restaurant that had been robbed, as its sole witness. Parson testified concerning the robbery itself and the security measures that the restaurant took to discourage such robberies. At the conclusion of Parson's testimony, Taco Bell made a motion for a directed verdict which incorporated the arguments it had made on the earlier directed verdict motion. The plaintiff also moved for a directed verdict in his favor on the issue of Taco Bell's liability. The trial court denied both motions.

The trial court instructed the jury on negligence, including an instruction that the owner of premises has a duty to operate his business in a reasonably safe manner in view of the foreseeability, if any, of injury to others. The court specifically instructed the jury that the criminal act of a third party that causes injuries to the plaintiff does not relieve the defendant of liability if the act of the third party is reasonably and generally foreseeable. No specific instruction was given relating to the use of armed guards.

The jury returned a verdict in the plaintiff's favor, awarding him $40,000 in damages. Taco Bell appealed to the court of appeals, asserting, among other grounds for reversal, that the trial court had erred

by denying its motion to dismiss made prior to trial and its motions for directed verdict, and by failing to submit to the jury instructions that had been tendered by the defendant on the issue of the plaintiff's alleged comparative negligence.[1]

The court of appeals first focused on the issue of whether the trial court had erred by refusing to submit the defendant's tendered instructions on comparative negligence to the jury. Because it believed that reasonable minds could differ as to whether the plaintiff had breached his duty to avoid a potentially injurious situation, the court of appeals reversed the trial court and held that on retrial the jury should be instructed on the doctrines of comparative negligence and sudden emergency.[2] *Lannon v. Taco Bell, Inc.*, 708 P.2d 1370, 1372–73 (Colo.App.1985).

The court of appeals then chose to decide issues that it believed might be presented again on retrial. As relevant to the issues before us on certiorari review, the court first held that the evidence established a duty on the part of the defendant to take "reasonable measures to prevent or deter reasonably foreseeable acts, and to alleviate known dangerous conditions"—specifically, the risks associated with armed robberies. *Id.* at 1373. Second, the court held that it was for the jury to decide whether the defendant had breached its duty by failing to employ armed, uniformed security guards. *Id.* Additionally, the court rejected the defendant's argument that proximate cause was not established because the criminal acts of the robbers were not foreseeable. The court held that this view of foreseeability was too restrictive and that the evidence that the restaurant was located in a high crime area and that previous armed robberies had occurred on the premises and at other nearby establishments was sufficient to present a jury question as to foreseeability. *Id.* at 1373–74.[3] Judge Smith dissented on the issue of duty, stating that he "would hold that Taco Bell had no duty, as a matter of law, to hire armed guards to protect its customers from the consequences of acts of armed robbers who may invade its premises." *Id.* at 1376.[4]

Both parties petitioned this court for a writ of certiorari. We denied the plaintiff's petition but, based on the defendant's peti-

---

**1.** Taco Bell also asserted that the trial court erred by: (1) admitting, over defense counsel's objection, police offense reports of armed robberies that had occurred on the premises in the three years prior to the robbery giving rise to this case, and failing to give a limiting instruction with respect to those reports; (2) permitting two police officers to express their opinions that the robbery would not have occurred if uniformed security guards had been present on the premises; and (3) giving certain instructions to the jury.

**2.** The doctrine of sudden emergency is based on the rationale "that in an emergency there is no time for cool reflective deliberation during which alternative courses of action might be considered and explored; but rather, the situation demands speedy decision based largely upon the actor's perception of the compelling circumstances." *Davis v. Cline,* 177 Colo. 204, 208, 493 P.2d 362, 363–64 (1972).

Under such conditions, the actor cannot reasonably be held to the same conduct as one who has had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation. His choice "may be mistaken and yet prudent."

*Id.* at 208, 493 P.2d at 364 (quoting W. Prosser, *The Law of Torts* § 33, at 169 (4th ed. 1971)). We express no view as to whether the court of appeals correctly held that an instruction on this doctrine should be submitted to the jury on retrial.

**3.** The court of appeals also held that the trial court properly admitted the police offense reports, and that Taco Bell had failed to show that the trial court's refusal to give a limiting instruction as to those reports was prejudicial error. *Lannon v. Taco Bell, Inc.,* 708 P.2d at 1374–75. The court of appeals did not address Taco Bell's contentions that the trial court erred by allowing police officers to express opinions as to causation and by giving certain instructions to the jury.

**4.** Judge Smith in his dissent states that the majority opinion holds "that Taco Bell had a duty, as a matter of law, to hire armed guards to protect its patrons from injury." *Lannon v. Taco Bell, Inc.,* 708 P.2d at 1375. We do not read the majority opinion as adopting such a holding. Rather, the court held that the jury was properly permitted to make a factual determination whether Taco Bell breached its duty of care to the plaintiff by not having an armed security guard on the premises.

tion, we granted certiorari on the issue of "[w]hether a fast food restaurant in a 'high crime area' has a legal duty to take security measures, possibly including the use of armed guards, to protect its patrons from the consequences of criminal acts on the part of unknown third persons." We turn now to the resolution of that issue.

## II.

### A.

■ "The question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court." *Smith v. City & County of Denver*, 726 P.2d 1125, 1127 (Colo.1986). *Accord Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 317 (Colo.1980); *Restatement (Second) of Torts* § 328B (1965). "The court determines, as a matter of law, the existence and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection." *Metropolitan*, 621 P.2d at 317. In determining whether the law imposes a duty on a particular defendant, many factors are to be considered. These factors may include, for example, "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant]." *Smith*, 726 P.2d at 1127. *Accord, e.g., Iverson v. Solsbery*, 641 P.2d 314, 316 (Colo.App.1982). Other considerations may also be relevant, depending on the circumstances of each particular case. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* §§ 31, 53 (5th ed. 1984) (cited herein as "W. Keeton"). No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards— whether reasonable persons would recognize a duty and agree that it exists. *See* W. Keeton, § 53, at 359.

On a few occasions, this court has considered the duty that owners or occupiers of land owe to those who enter on their premises. In *Safeway Stores, Inc. v. Smith*, 658 P.2d 255 (Colo.1983), a case in which the plaintiff had slipped and fallen in the defendant's grocery store, we held that "[a] store operator has a duty to his customers to use ordinary care to keep the floors used by them in a reasonably safe condition." *Id.* at 256. More generally, we also stated that a "proprietor is guilty of negligence only if he fails to use reasonable care under the circumstances to discover the foreseeable dangerous condition and to correct it or to warn customers of its existence." *Id.* at 258.

In *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971), a case in which the plaintiff had stepped in a posthole located on the defendant's property, we held that foreseeability, rather than the status of the plaintiff as a trespasser, licensee, or invitee, is the primary factor in determining whether an owner or occupier of land owes a duty to persons who enter on the premises. *Id.* at 547–48, 489 P.2d at 314. "[I]t is the *foreseeability* of harm from the failure by the possessor to carry on his activities with reasonable care for the safety of the entrants which determines liability." *Id.* at 547, 489 P.2d at 314 (emphasis in original). "[T]he occupant, in the management of his property, should act as a reasonable man in view of the probability or foreseeability of injury to others." *Id.* at 548, 489 P.2d at 314. *See also Kerby v. Flamingo Club, Inc.*, 35 Colo.App. 127, 532 P.2d 975 (1974).

Together, *Safeway* and *Mile High Fence* stand for the proposition that owners or occupiers of land have a duty to exercise reasonable and ordinary care to make their premises safe for those who may enter upon them. However, this court has never decided whether this duty encompasses taking reasonable measures to protect business patrons from injuries caused by the criminal acts of unknown third persons.

Other courts that have considered this issue have almost uniformly held that while owners or occupiers of land held open for business purposes are not insurers of their customers' safety, a duty arises on the part

of the owner or occupier to take reasonable measures to protect customers from injuries caused by the criminal acts of unknown third persons when such acts are generally foreseeable. *E.g., Cohen v. Southland Corp.*, 157 Cal.App.3d 130, 203 Cal.Rptr. 572, 575 (1984); *Antrum v. Church's Fried Chicken, Inc.*, 40 Conn. Supp. 343, 499 A.2d 807, 808–10 (1985); *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 525 (Del.1987); *Stevens v. Jefferson*, 436 So.2d 33, 34–35 (Fla.1983); *Taylor v. Hocker*, 101 Ill.App.3d 639, 57 Ill.Dec. 112, 428 N.E.2d 662, 664 (1981); *Martinko v. H–N–W Associates*, 393 N.W.2d 320, 321–22 (Iowa 1986); *Nappier v. Kincade*, 666 S.W.2d 858, 860–62 (Mo.Ct.App.1984); *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 678 P.2d 683, 684–85 (1984); *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 445 A.2d 1141, 1143 (1982);[5] *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451, 457–58 (1980); *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E.2d 36, 38–39 (1981); *Daily v. K–Mart Corp.*, 9 Ohio Misc.2d 1, 458 N.E.2d 471, 475 (1981); *Uihlein v. Albertson's, Inc.*, 282 Or. 631, 580 P.2d 1014, 1018 (1978). *Murphy v. Penn Fruit Co.*, 274 Pa.Super. 427, 418 A.2d 480, 482–83 (1980). *But see Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975) (shopkeeper has no duty to take measures to protect invitees from consequences of criminal acts by third persons unless shopkeeper knows or has reason to know that such acts are occurring or are about to occur and that such acts pose imminent probability of harm to invitee); *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60 (Tex.Ct.App.1983) (same).

The *Restatement (Second) of Torts* § 344 (1965) also recognizes that an owner or occupier of property has a duty to protect customers from injury caused by criminal conduct in such circumstances. Section 344 provides:

Business Premises Open to Public: Acts of Third Persons or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment f to section 344 makes clear that the existence of this duty depends, to a great extent, on the foreseeability of criminal conduct by third persons.

*Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience,

---

**5.** In an earlier case, *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 186 A.2d 291 (1962), the New Jersey Supreme Court concluded by a 4–3 vote that a municipal housing authority had no duty to provide police protection in a housing project. The defendant supermarket in *Butler* relied on *Goldberg* in arguing that the store was not liable to a customer assaulted in its parking lot. The New Jersey Supreme Court discussed the three reasons for the conclusion in *Goldberg:*

(1) that police work was specialized and there was no room for the private devices to operate in the field; (2) that the imposition of the cost of the security upon the tenants was unfair, and (3) the inevitable vagueness of the proposed duty...,

*Butler*, 445 A.2d at 1145. The court then considered the applicability of this reasoning in the context of an assault upon a customer in the parking lot of a modern supermarket, and concluded that the reasoning was not persuasive. The court noted first that the use of trained private security guards has become widespread, and in fact the supermarket already employed off-duty police officers. Second, the court concluded that it was fair that the costs of negligent failure to protect against crime be borne by the operators of such shopping facilities and passed on indirectly to the customers. Finally, the court pointed out that the vagueness of the duty imposed is inherent in the test of reasonableness. Therefore, the court unanimously held that it was for the jury to decide whether the supermarket acted reasonably to safeguard its customers from the criminal acts of third persons.

that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he *may* be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

(Emphasis added.) We agree with the statement of the law contained in section 344 and comment f. *Accord, e.g., Cohen,* 203 Cal.Rptr. at 576; *Jardel Co.,* 523 A.2d at 524–25; *Martinko,* 393 N.W.2d at 321–22; *Butler,* 445 A.2d at 1145–46; *Nallan,* 407 N.E.2d at 457–58; *Foster,* 281 S.E.2d at 38–39; *Uihlein,* 580 P.2d at 1018.

Turning to the facts of the present case, we conclude that the evidence of ten armed robberies at this particular Taco Bell restaurant in the three years prior to the incident at issue in this case sufficiently established that harm to customers as the result of criminal acts by third persons was foreseeable by Taco Bell. *Cf. Butler,* 445 A.2d at 1142–44 (evidence of seven muggings in past year at store sufficient to establish foreseeability); *Foster,* 281 S.E.2d at 39 (allegations of twenty-nine criminal incidents in mall parking lot in year prior to assault sufficient to state duty element of a cause of action; type of incidents not specified); *Daily,* 458 N.E.2d at 472–76 (allegations of forty-nine incidents of serious crime at store sufficient to present issue of breach of duty to jury).

Taco Bell argues, however, that the plaintiff's injury was not foreseeable since armed robberies of the type involved in this case occur randomly and without notice of the specific time and the specific manner in which they will take place. We reject this argument. The concept of foreseeability is simply not so limited. To establish that an incident is foreseeable, it is not necessary that an owner or occupier of land held open for business purposes be able to ascertain precisely when or how an incident will occur. Rather, foreseeability "includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct." 3 F. Harper, F. James, & O. Gray, *The Law of Torts* § 18.2, at 658–59 (2d ed. 1986) (cited herein as "3 F. Harper"). The fact that ten armed robberies had occurred at the Taco Bell restaurant in a period of three years would certainly put a reasonable person on notice that such robberies would be likely to occur in the future and that the consequences of those robberies should be considered in determining how the restaurant should be run. *Cf. Ekberg v. Greene,* 196 Colo. 494, 588 P.2d 375 (1978) (evidence of past vandalism of gas station restroom sufficient for jury to find that vandalism of restroom in future was foreseeable); *Kerby v. Flamingo Club, Inc.,* 35 Colo.App. 127, 532 P.2d 975 (1975) (previous fights and disturbances on premises established that such incidents were foreseeable); *Cohen v. Southland Corp.,* 157 Cal.App.3d 130, 203 Cal.Rptr. 572, 576–77 (1984) (evidence of one prior armed robbery at 7–Eleven store together with evidence of more than one robbery per store per annum at other 7–Elevens in area sufficient to make foreseeability a triable issue of fact); *Nappier v. Kincade,* 666 S.W.2d 858, 862 (Mo.Ct.App. 1984) (prior criminal acts on premises will be sufficient to put owner on notice of possible harm to customers; not necessary that owner be aware of exact type of criminal acts that might take place on the premises).

Taco Bell also argues that the plaintiff's injury was not foreseeable because none of the previous armed robberies at the restaurant had resulted in injury to any customer. This argument cannot withstand scrutiny. Simply because something has not yet happened does not mean that its happening is not foreseeable. Instead, foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances. *See Restatement (Second) of Torts* § 289 (1965). We have little difficulty in concluding that armed robberies

present a significant risk of injury to persons unfortunate enough to be present when one occurs. Therefore, the plaintiff's injury was foreseeable despite the absence of injuries from the previous armed robberies that had occurred at this particular Taco Bell restaurant. *Cf. Ekberg,* 196 Colo. at 495–97, 588 P.2d at 376–77 (jury could reasonably conclude that previous vandalisms of gas station restroom together with other conditions in restroom rendered injury to members of the public foreseeable); *Cohen,* 203 Cal.Rptr. at 577 & n. 2 (injury to customer during armed robbery foreseeable despite absence of injury in only prior armed robbery at store); *Jardel Co.,* 523 A.2d at 525 ("[T]he repetition of criminal activity, regardless of its mix, may be sufficient to place the property owners on notice that personal injury, not merely property loss, will result.").

We are satisfied that the risk of injury to the plaintiff was foreseeable in the present case. However, as noted earlier, foreseeability alone does not establish the existence of a duty.[6] There are other considerations that we believe are relevant in helping to determine whether a duty arose in this case.

Armed robberies present a substantial degree of risk to the public. No evidence was presented in this case concerning the frequency of injuries to patrons resulting from armed robberies on business premises. However, we are persuaded that whatever the likelihood of armed robberies at this restaurant and of injuries resulting from those armed robberies may be, the gravity of the possible harm to patrons from such robberies is substantial. "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." W. Keeton, § 31, at 171. *Accord* 3 F. Harper, § 16.2, at 471.

We also do not believe that imposition of a duty to take reasonable measures to protect patrons from the consequences of criminal acts on the part of unknown third persons would place an onerous burden on either Taco Bell or the community. To be sure, such measures would result in some economic burden on Taco Bell and a predictable corresponding increase to customers in the cost of Taco Bell's food products. For the most part, however, we believe that these potential measures—which, according to the evidence in this case, might include making sure the restaurant is well illuminated, installing highly visible video cameras, keeping small amounts of cash in the registers, posting signs notifying potential robbers of the small amount of cash kept on the premises, training employees in methods for dealing with in-progress robberies, and locking non-public entrances during nighttime hours—are relatively inexpensive.[7] *Accord Cohen,* 203 Cal.Rptr. at 579.

Furthermore, we believe that it is equitable that the cost of taking reasonable measures to protect patrons from criminal activity be borne by the owner, operator, and, indirectly, the customers of the restaurant. As stated by the California Court of Appeals in *Cohen:*

It is also not unfair that patrons pay a few cents more for items they purchase from such a store and gain the assurance of reasonable protection against criminal activity by shopping there, rather than allow the emotional and physical burden of a criminal attack to fall on the store patron who inadvertently finds himself or herself in the middle of a robbery

---

**6.** Section 344 of the *Restatement (Second) of Torts,* comment f, does not require imposition of a duty merely if foreseeability is established. Rather, comment f to section 344 states that a duty "may" arise if foreseeability is established. Therefore, section 344 is consistent with our previous holdings on the issue of how the existence of a duty is to be determined.

**7.** We list these possible measures for purposes of illustration only. They are not intended to be regarded as a complete list of security measures that may be regarded as reasonable. Nor do we mean to imply by listing these particular measures that a defendant must take all or even any of these measures in order to meet its duty. The question of whether a plaintiff has breached its duty by taking a certain action or by failing to take a certain action is one for the jury to decide. *See* our discussion in Part II B of this opinion.

invited by the store's failure to employ minimal crime deterrence measures. *Cohen,* 703 Cal.Rptr. at 579. *Accord, e.g., Antrum,* 499 A.2d at 810; *Butler,* 445 A.2d at 1145. *See generally,* 3 F. Harper, § 16.9, at 475–80 (where cost of precautions is relatively low, social utility of not taking precautions is usually outweighed by the risk involved).

Taking all of these factors into consideration, we conclude that the court of appeals was correct in holding that Taco Bell had a legal duty, under the circumstances of this case, to take reasonable measures to protect its customers from the consequences of criminal acts on the part of unknown third persons.[8]

We turn now to the question of whether the court of appeals was correct in deciding that the issue of whether Taco Bell breached its duty by failing to provide one or more armed security guards was properly left to the jury to decide.

### B.

■ While the question of whether a particular defendant owed a legal duty to a particular plaintiff is a question of law, and therefore a question for the court to decide, *Smith,* 726 P.2d at 1127; *Metropolitan,* 621 P.2d at 317, the question of whether the defendant breached that duty by its actions or by its failure to act is a question of fact, and therefore a question to be decided by the jury. *City of Aurora v. Loveless,* 639 P.2d 1061, 1063 (Colo.1981); *Metropolitan,* 621 P.2d at 318–19; W. Keeton, § 37, at 237–38; 3 F. Harper, § 18.8, at 743; *Restatement (Second) of Torts* § 328C (1965); James, *Functions of Judge and Jury In Negligence Cases,* 58 Yale L.J. 667 (1949) (cited herein as "James"). Only when the evidence is so clear that reasonable minds could not differ as to whether the defendant failed to exercise reasonable care and thereby breached its duty to the plaintiff may the court take that question from the jury and direct a verdict. *Ferguson v. Gardner,* 191 Colo. 527, 530, 554 P.2d 293, 296 (1976); W. Keeton, § 37, at 237–38; 3 F. Harper, § 18.8, at 744; *Restatement (Second) of Torts* § 328C comment b (1965); James, 58 Yale L.J. at 676–79.

With these principles in mind, we agree with the court of appeals that it was proper to submit to the jury the issue of whether Taco Bell breached its duty by failing to provide armed security guards. The record clearly shows that the plaintiff relied solely on Taco Bell's failure to provide one or more armed security guards to establish that Taco Bell breached its duty to the plaintiff. Although the plaintiff's witnesses testified as to several precautions, including the use of armed security guards, that a fast food restaurant could take to deter robberies, the only evidence that Taco Bell had failed to take these precautions was that there was no armed security guard at the restaurant on the night of the robbery. Three Denver police officers experienced in investigating crimes and in providing security for fast food restaurants testified that other fast food restaurants in "high crime areas" frequently employed armed security guards. Two testified that, in their opinion, the robbery in this case would not have occurred if an armed security guard had been on the premises. Also, a management employee of another fast-food restaurant in Denver testified that the restaurant at which she worked, and at least one other fast food restaurant operated by the same company, had employed armed security guards for several years because of concerns about vandalism and robberies. Taco Bell offered no evidence concerning the effectiveness of armed guards in deterring and handling robberies

---

**8.** Taco Bell and the amicus curiae argue that the presence of armed guards in a restaurant increases rather than diminishes the risk to customers during a robbery and therefore in no circumstances should the owner of a restaurant have a duty to hire armed guards. The record contains no evidence in support of this contention, and we have no basis to verify it as a matter of law. We believe this concern is most properly analyzed as a factual issue to be resolved on a case by case basis, *i.e.,* did the owner or occupier take *reasonable* measures to protect customers from injuries caused by the criminal acts of unknown third persons when such acts are generally foreseeable.

or the cost to the restaurant of hiring armed guards.

Based on this record it cannot be said that reasonable persons could reach but one conclusion with respect to whether Taco Bell breached its duty by failing to provide one or more armed security guards. It follows that the issue was properly submitted to the jury. *E.g., Cohen,* 203 Cal.Rptr. at 579–80; *Jardel Co.,* 523 A.2d at 525–26; *Butler,* 445 A.2d at 1146; *Foster,* 281 S.E.2d at 40.

### III.

In summary, we conclude that Taco Bell had a legal duty in this case to take reasonable measures to protect its patrons from the consequences of criminal acts on the part of unknown third persons. We further conclude that it was for the jury to decide whether Taco Bell breached its duty by failing to provide one or more armed security guards.[9]

The judgment of the court of appeals is affirmed.

ERICKSON, J., dissents.

ROVIRA and VOLLACK, JJ., join in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. In holding that the jury should decide whether Taco Bell breached its duty to its patrons by failing to provide security guards, the majority establishes a dangerous precedent. I do not quarrel with the majority's conclusion that an armed robbery at the Taco Bell was foreseeable. Nor do I dispute that a store-owner has a duty to take reasonable measures to protect its customers from the consequences of foreseeable criminal acts on the part of unknown third parties. As a matter of policy, however, I believe that "reasonable measures" falls short of requiring armed guards.[1]

While it may have been foreseeable that an armed robbery would occur at the Taco Bell, it does not follow that the shooting of a customer was foreseeable, *Nigido v. National Bank of Baltimore,* 264 Md. 702, 704, 288 A.2d 127, 128 (1972), or that Taco Bell had a duty to provide police protection.

Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide "police" protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owners. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable. *Goldberg,* 38 N.J. at 583, 186 A.2d at 293 (1962); *see also Cook v. Safeway Stores,* 354 A.2d 507 (D.C.1976); *Radloff v. National Food Stores,* 20 Wis.2d 224, 121 N.W.2d 865 (1963). These courts agree that given the unpredictability of criminal behavior it is unfair to impose a duty to provide armed guards upon business owners because businesses would not know whether the duty is theirs or whether they have performed it.

"The question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court." *Smith v. City and County*

---

9. As this opinion reflects, the issues of duty and breach must be resolved in the evidentiary context in which they arise. We recognize that when this case is retried the evidence may differ from that presented in the original trial. On retrial, the judge must assure that these issues are resolved on the basis of the evidence as presented, applying the principles set forth in this opinion.

1. The majority applies § 344 and comment f. I disagree and and prefer the reasoning of the Tennessee Supreme Court when it declared that

"it is a mistake to equate the duty of shopkeepers with respect to criminal acts with the duty of shopkeepers with respect to careless acts. Section 344 of the Restatement of Torts (Second) places both acts in exactly the same category in comment f." *Cornpropst v. Sloan,* 528 S.W.2d 188, 197 (Tenn.1975); *see also Ortell v. Spencer Companies,* 477 So.2d 299 (Ala.1985); *Costillo v. Sears Roebuck & Co.,* 663 S.W.2d 60 (Tex.Ct.App.1983). In my view, comment f establishes a vague duty which is susceptible to an overly broad application.

*of Denver,* 726 P.2d 1125, 1127 (Colo.1986). Many factors enter into the determination of whether a duty is owed under the circumstances of a particular case. The factors depend upon the facts and include, for example, "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Smith,* 726 P.2d at 1127. The majority acknowledges that the question of whether to impose a duty in a given case is "essentially one of fairness under contemporary standards," At 46, but then relies almost exclusively upon foreseeability in arriving at its conclusion, At 46–49.

The risk associated with the operation of the Taco Bell restaurant is that customers might be injured during armed robberies. According to the plaintiff's expert testimony, people are usually not injured or shot in armed robberies. Two police officers stated that the best way to prevent injury during a robbery is to be totally cooperative, not to resist or make sudden moves, and to relinquish the money. An employee of Taco Bell testified that employees were instructed so as to avoid injury during robberies. The wisdom of this instruction was reflected by the fact that no customer had previously been injured during a robbery. While an armed robbery may have been foreseeable, there was only a small likelihood of injury resulting to a customer.

Requiring fast food restaurants to hire armed guards to protect patrons imposes a substantial burden upon proprietors. The problems inherent in requiring armed guards were illustrated in *Goldberg v. Housing Auth. of Newark,* 38 N.J. 578, 590–91, 186 A.2d 291, 297 (1962):

> Not only would there be uncertainty as to *when* the duty to furnish police protection arises and as to *what* measures will discharge the duty, there would also be exceptional uncertainty with respect to the issue of causation. This is so because of the extraordinary speculation inherent in the subject of deterrence of men bent upon criminal ventures. It

would be quite a guessing game to determine whether some unknown thug of unknowable character and mentality would have been deterred if the owner had furnished some or some additional policemen. It must be remembered that police protection does not, and cannot, provide assurance against all criminal attacks, and so the topic presupposes that inevitably crimes will be committed notwithstanding the sufficiency of the force. Hence the question of proximate cause is bound to be of exceptional difficulty.

(Emphasis in original).

Expert testimony at trial supports these observations. Three police officers, testifying for the plaintiff, stated that armed security guards do not prevent all armed robberies. The officers agreed that knowledge of a robber and his mental state is required to prevent a particular robbery, but noted that robberies occur randomly and are unpredictable. The police officers could not say with certainty that the presence of armed guards would have prevented this particular robbery.

> Fairness ordinarily requires that a man be able to ascertain in advance of a jury verdict whether the duty is his and whether he has performed it.... [H]ow can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic? Must the owner prevent *all* crimes?

*Goldberg,* 38 N.J. 578, 589–90, 196 A.2d 291, 297 (1962) (emphasis in original). Imposing a burden upon business owners, which is a function of government law enforcement agencies, creates conflicting responsibilities for the enforcement of the criminal laws, and may expose Taco Bell's patrons to greater dangers. Whatever degree of effectiveness may be intended, the majority fails to provide a standard of performance to which the business owner can look for guidance before the crime is committed and by which conduct can be measured after the crime occurs. *Pietila v. Congdon,* 362 N.W.2d 328, 333 (Minn.1985).

Imposing liability upon business owners for failing to provide armed guards to prevent criminal acts of third parties is a quick-fix solution to a complicated social problem. It is also a solution that creates hazards. The record discloses that people are seldom shot or injured in armed robberies. However, the presence of firearms during an armed robbery increases the likelihood of injury. One of the police officers testified that he was aware of instances where police officers have injured customers in shootings which took place during robberies.

The extraordinary speculation inherent in the subject of deterrence of crime is illustrated by *Harris v. Pizza Hut of Louisiana*, 455 So.2d 1364 (La.1984). In *Harris*, the defendant restaurant, located in a high-crime neighborhood, employed an off-duty New Orleans police officer as a security guard. On the evening of March 17, 1979, the armed and uniformed officer arrived at the Pizza Hut, fixed himself dinner, and seated himself at a table where he dined and talked with a customer. While the officer was looking down to adjust his belt, two armed robbers entered the restaurant. As the officer reached for his revolver, one of the robbers pointed a sawed-off shotgun at him, saying "don't move, pig." The officer moved to his right. The robber fired the shotgun, wounding the officer, injuring one customer, and killing another. At trial, the jury found that the officer was negligent, and that his negligence was the cause-in-fact of the injury. The jury awarded the plaintiffs $510,000. The Louisiana Supreme Court concluded:

> Once employed, the security guard was under a duty to discharge his obligations in a reasonable and prudent manner, and especially not to contribute by his act or omission to the escalation of violence during an armed robbery which resulted in persons being wounded and killed.

*Harris*, 455 So.2d at 1372 (La.1984). *Harris* vividly illustrates a potential consequence of placing a duty to provide armed guards upon business proprietors. The security guard in *Harris* was an off-duty police officer. Yet despite his experience and professional training, he chose to have dinner and socialize with customers behind a partition. When the robbers entered with the sawed-off shotgun, he was unprepared and his movements provoked gunfire by the robbers. In attempting to fulfill its duty to the customers, Pizza Hut increased the likelihood of injury resulting from the armed confrontation.

In *Nigido v. National Bank of Baltimore*, 264 Md. 702, 288 A.2d 127 (1972), the court stated:

> It has occurred to us that not providing armed guards might very well reflect the exercise of sound judgment rather than negligence. If it is the rationale of the bank that armed guards might provide gun play and that it is better to lose cash than lives, then the total absence of guards would seem to be justified.

Since the plaintiff's expert witnesses testified that guns increase the likelihood of injury, that no customer had previously been injured during robberies at the Taco Bell,[2] and that Taco Bell employees were instructed to cooperate with robbers so as to avoid injury, it is not clear that armed guards would have prevented the plaintiff's injury. While the evidence at trial indicated that the presence of armed guards serves as a deterrent to crime, this benefit is, to an extent, offset by the fact that additional firearms increase the likelihood of injury resulting from confrontation.

I also question the propriety of obligating a restaurant owner to maintain a private police force to patrol its premises. Crime is a fact of modern life. Each day residents of urban areas risk falling prey to thieves, muggers, and robbers. The existence of this risk, however, does not mean that private enterprises are obligated to provide armed guards to insure the safety of persons invited to do business with them. *Cook*, 354 A.2d at 507 (common law

---

**2.** On two occasions, however, employees were struck by armed robbers. On September 2, 1977, the manager was hit in the head with a sawed off shotgun. On September 1, 1978, an-other employee was slapped three times. The record does not indicate whether either of these employees sustained injuries.

of negligence does not impose an obligation on businesses to provide armed guards to protect business invitees); *Rosensteil v. Lisdas*, 253 Or. 625, 630, 456 P.2d 61, 63 (1969) (it is not the duty of restaurant owners to risk their lives or to employ others to risk theirs to protect customers); *see also Johnston v. Harris*, 387 Mich. 569, 577, 198 N.W.2d 409, 412 (1972) (Brennan, J. dissenting) ("the intrusion of private business into the business of public safety has been one of the most unfortunate phenomena of the 1960's and 1970's"); *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 186 A.2d 291 (1962) (police function is highly specialized, involving skills and training that only government can provide).

In my view, the creation of private police forces contravenes public policy by shifting the government's law enforcement duty to the private sector. Private security guards frequently do not have the same level of training or expertise as police officers. Yet, unlike the government which is not liable for the negligent acts of police officers,[3] business proprietors who employ security guards risk civil liability for the negligent acts of these armed servants. Business owners are thereby forced to act as insurers of the safety of their patrons. If they conscientiously decide not to hire armed guards, they risk liability; if they hire qualified guards who make a mistake which results in injury to a customer, they face liability.

Accordingly, I dissent.

I am authorized to say that Justice ROVIRA and Justice VOLLACK join in this dissent.

---

**3.** Recently, some courts have imposed liability on municipalities for the negligent failure of the police to prevent a crime. *See, e.g., Irwin v. Town of Ware*, 329 Mass. 745, 467 N.E.2d 1292 (1984); *Huhn v. Dixie Ins. Co.*, 453 So.2d 70 (Fla.Dist.Ct.App.1984). *But see* Note, *Police Liability for Negligent Failure to Prevent Crime*, 94 Harv.L.Rev. 821, 822 (1981) (prevailing view remains no liability).