The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA26

**No. 17CA2304, *Wagner v. Planned Parenthood* — Damages —
Actions Against Landowners; Civil Procedure — Summary
Judgment**

In this premises liability case, a division of the court of appeals
concludes that the trial court erred in granting summary judgment
in favor of Rocky Mountain Planned Parenthood, Inc., a/k/a
Planned Parenthood of the Rocky Mountains, Inc. (PPRM), based on
its conclusion that a gunman's actions were "the predomina[nt]
cause" of the injuries and deaths. The division finds that plaintiffs
tendered sufficient evidence to raise genuine issues of material fact
whether (1) reasonable security measures were known to PPRM that
would have prevented harm to the victims; and (2) PPRM was
sufficiently aware of the potential for criminal conduct against its
clinics to prepare for the type of offenses committed by the gunman.

The dissent concludes that summary judgment was proper because the gunman's actions had a predominant effect in producing plaintiffs' injuries, thus preventing PPRM's alleged negligence from becoming a substantial factor.

COLORADO COURT OF APPEALS     **2019COA26**

---

Court of Appeals No. 17CA2304
City and County of Denver District Court No. 16CV31798
Honorable Elizabeth A. Starrs, Judge

---

Samantha Wagner; Ashley Stewart; A.S., a child acting through her mother
and next best friend, Ashley Stewart; Mandy Davis; and Ammar Laskarwala,

Plaintiffs-Appellants,

v.

Planned Parenthood Federation of America, Inc.; and Rocky Mountain Planned
Parenthood, Inc., a/k/a Planned Parenthood of the Rocky Mountains, Inc.,

Defendants-Appellees.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE ROTHENBERG*
Harris, J., concurs
Webb, J., concurs in part and dissents in part

Announced February 21, 2019

---

McCormick & Murphy, P.C., Kirk R. McCormick, Colorado Springs, Colorado;
Law Offices of Joseph J. Archuleta and Associates, P.C., Joseph Archuleta,
Denver, Colorado; Wilcox Law Firm, LLC, Ronald L. Wilcox, Denver, Colorado,
for Plaintiffs-Appellants

Taylor Anderson LLP, Kevin S. Taylor, Kyle Seedorf, John M. Roche, Margaret
L. Boehmer, Denver, Colorado; Spencer Fane, LLP, Lisa K. Mayers, Denver,
Colorado, for Defendants-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Plaintiffs, Samantha Wagner; Ashley Stewart; A.S., a child by and through her mother and next best friend Ashley Stewart; Mandy Davis; and Ammar Laskarwala, appeal the trial court's entry of summary judgment in favor of defendants, Planned Parenthood Federation of America, Inc. (PPFA), and Rocky Mountain Planned Parenthood, Inc., a/k/a Planned Parenthood of the Rocky Mountains, Inc. (PPRM).  We affirm the summary judgment as to PPFA but reverse the summary judgment as to PPRM and remand for further proceedings.

## I.  Background

¶ 2    Plaintiffs are the victims or survivors of other victims killed on the early afternoon of November 27, 2015, by Robert Dear.  Dear drove into the parking lot of the Colorado Springs clinic operated by PPRM, a member of PPFA.  His truck contained four semi-automatic SKS rifles, two handguns, a shotgun, a rifle, and several homemade explosive devices.  As Dear stepped out of his truck, he shot several people in the parking lot, two of whom died.

¶ 3    Dear then carried his weapons to a glass door at the building, fired a gun through it, and entered the clinic.  He wounded several

1

more people inside, and when the police arrived he engaged them in a lengthy gun battle, killing one officer and wounding five others.

¶ 4 Plaintiffs' claim against PPRM asserted that they were invitees under Colorado's Premises Liability Act (CPLA), section 13-21-115, C.R.S. 2018. Plaintiffs also filed a common law negligence claim against PPFA, asserting that PPFA controlled PPRM.

¶ 5 Following discovery, the trial court granted summary judgment in favor of PPRM and PPFA on both claims. The court determined as a matter of law that "the predominant cause was plainly Robert Dear's actions, not the actions or inactions of PPRM," and that "'a reasonably thoughtful person' would not have predicted that a deranged man would appear at PPRM seeking to commit a mass murder." The trial court further concluded that "PPFA had no common law duty to [p]laintiffs as a result of any 'special relationship,'" that PPFA merely exercised "discretion" over PPRM, and that there was "no other potential basis for a duty of care owed by PPFA to these [p]laintiffs."

## II. Standard of Review

¶ 6 A summary judgment is reviewed de novo. *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 980 (Colo. App. 2007).

"Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 979. Nevertheless, a court must give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed evidence and resolve all doubts in favor of the nonmoving party. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465-66 (Colo. 2003).

### III. Claims against PPFA

¶ 7 Plaintiffs contend the trial court erred in granting summary judgment in favor of PPFA because there is a genuine issue of material fact whether PPFA's control over PPRM created a duty of care owed by PPFA to plaintiffs. We disagree.

¶ 8 To recover on a negligence claim, a plaintiff must establish that the defendant owed the plaintiff a legal duty of care, that the defendant breached that duty, that the plaintiff was injured, and that the defendant's breach caused that injury. *N.M. ex rel. Lopez v. Trujillo*, 2017 CO 79, ¶¶ 23-33. Whether a duty exists requires the court to determine whether the plaintiff's interest that has been infringed on by the defendant's conduct is entitled to legal

3

protection.  *See Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980).

¶ 9    The Colorado Supreme Court has recognized a distinction between claims based on a defendant's failure to act (or nonfeasance) and claims based on a defendant's active misconduct (or misfeasance).  *See Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987) ("In determining whether a defendant owes a duty to a particular plaintiff, the law has long recognized a distinction between action and a failure to act — 'that is to say, between active misconduct working positive injury to others [misfeasance] and passive inaction or a failure to take steps to protect them from harm [nonfeasance].'" (quoting W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser & Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984))); *see also Trujillo*, ¶ 28.

¶ 10    In nonfeasance cases, the existence of a duty is recognized only in situations involving a limited group of special relationships between parties.  *Whitlock*, 744 P.2d at 58.  These special relationships have included (1) common carrier/passenger; (2) innkeeper/guest; (3) possessor of land/invited entrant; (4) employer/employee; (5) parent/child; and (6) hospital/patient.  *Id.*

4

¶ 11　　In this case, the trial court found that PPFA merely exercised discretion and not control over PPRM, and that it was not the owner or possessor of the land associated with the PPRM clinic. There is record support for those findings. Hence, the court did not err in concluding PPFA owed no duty to plaintiffs and in granting PPFA's motion for summary judgment against plaintiffs.

## IV. Claims against PPRM

¶ 12　　Plaintiffs next contend the trial court erred in concluding as a matter of law that Dear's actions were "the predomina[nt] cause" of the injuries and deaths, and in granting summary judgment to PPRM on that basis. Plaintiffs maintain that they tendered sufficient evidence to raise genuine issues of material fact whether (1) reasonable security measures were known to PPRM that would have prevented harm to the victims; and (2) PPRM was sufficiently aware of the potential for criminal conduct against its clinics to prepare for the type of offenses committed by Dear. We agree.

### A. Applicable Law

¶ 13　　The CPLA, section 13-21-115(2), sets the standard for the possible liability of a "landowner" when someone is injured on the

5

landowner's property "by reason of the condition of such property, or activities conducted or circumstances existing on such property."

¶ 14    "The overriding purpose of the premises liability statute is to clarify and to narrow private landowners' liability to persons entering their land, based upon whether the entrant is a trespasser, licensee, or invitee." *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1219 (Colo. 2002); *see Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1266 (Colo. App. 2010); *see also Lucero v. Ulvestad*, 2015 COA 98, ¶¶ 11-12.  The General Assembly indicated its intent to completely occupy the field and supersede the existing law in the area, such that the CPLA "leaves no room for application of common law tort duties." *Vigil v. Franklin,* 103 P.3d 322, 327-28 (Colo. 2004).

¶ 15    Courts determine as a matter of law whether the injured person was a trespasser, a licensee, or an invitee.  Two theories are commonly used to establish invitee status.  A person can be an invitee if he or she is a member of the public and a landowner has expressly or implicitly represented that the public is expected to enter the property.  *Wycoff,* 251 P.3d at 1266-67; *see also Axelrod v. Cinemark Holdings, Inc.*, 65 F. Supp. 3d 1093, 1097 (D. Colo. 2014).

Another example would be where a sign labeling a sidewalk as a "bicycle path" communicates to the public that it may enter and use it as such. *Nelson v. United States*, 20 F. Supp. 3d 1108, 1136 (D. Colo. 2014), *rev'd and remanded*, 827 F.3d 927 (10th Cir. 2016).

¶ 16 In this case, it appears to be undisputed that the injured parties were invitees and that PPRM is a landowner under the CPLA.

¶ 17 Section 13-21-115(3)(c)(I) provides that an invitee "may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known."

¶ 18 Plaintiffs also must prove their injuries were causally related to PPRM's activity on the property. *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 827 n.4 (Colo. 2002); *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 37, *aff'd*, 2015 CO 24. "Causation is a question of fact for the jury unless the facts are undisputed and reasonable minds could draw but one inference from them." *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985-96 (Colo. App. 2011). Whether the trial court applied the correct test for causation is a legal question. *Id.* at 985.

## B. Application

¶ 19    The dispositive question in this appeal with respect to PPRM is simply this: Is there a genuine dispute of fact whether PPRM knew or should have known of the danger faced by the invitees who had entered, or were attempting to enter, its premises on November 27, 2015? *See Axelrod*, 65 F. Supp. 3d at 1098. We conclude there is a factual dispute on that issue.

¶ 20    *Axelrod* is instructive because it involved injuries that were inflicted on invitees at a movie theater by an individual armed with numerous deadly weapons. There, defendant Cinemark argued in its motion for summary judgment that the court should decide that Cinemark neither knew nor should have known of this danger because the danger was unforeseeable as a matter of law. However, the federal district court there recognized that whether a landowner should have known of a particular danger generally is a question of fact, not law. *See Vigil*, 103 P.3d at 326 ("Whether an injured plaintiff is a trespasser, licensee, or invitee must be decided by the court, but the ultimate issues of liability and damages are questions of fact for a jury, or if none, for the trial judge.").

¶ 21    The federal district court in *Axelrod* recognized, as do we, that "a court could find a danger to be so unprecedented and remote that, as a matter of law, no rational juror could find that a landowner should have known about it." 65 F. Supp. 3d at 1098.

¶ 22    For example, in *Lopez v. McDonald's Corp.*, 238 Cal. Rptr. 436, 438 (Cal. Ct. App. 1987), a man walked into a McDonald's restaurant in 1984 in San Ysidro, California, armed with a rifle, a handgun, and a shotgun and indiscriminately shot patrons and employees, ultimately leaving twenty-one persons dead and eleven others injured. Survivors and surviving family members sued McDonalds, arguing that the restaurant was in a high-crime area, that it had considered but ultimately declined to retain a private security company, and that McDonalds should be liable on theories of negligence and premises liability. *Id.*

¶ 23    McDonalds argued there — just as PPRM does in this case — that, as a matter of law, the incident was so unlikely as to fall outside the boundaries of a restaurant's general duty to protect patrons from reasonably foreseeable criminal acts and that its general duty to its patrons did not include protection against a "once-in-a-lifetime" massacre. *Id.* at 441. A district of the

9

California Court of Appeals agreed and affirmed the trial court's

grant of summary judgment, reasoning as follows:

> [W]e conclude as a matter of law . . . the unforeseeability of the unique, horrific San Ysidro event requires negligence liability to be restricted here. First, as to the foreseeability of harm to plaintiffs, the theft-related and property crimes of the type shown by the history of its [o]perations, or the general assaultive-type activity which had occurred in the vicinity bear no relationship to purposeful homicide or assassination. In other words, under all the circumstances presented, the risk of a maniacal, mass murderous assault is not a hazard the likelihood of which makes McDonalds's conduct unreasonably dangerous. Rather, the likelihood of this unprecedented murderous assault was so remote and unexpected that, as a matter of law, the general character of McDonald's nonfeasance did not facilitate its happening. [The perpetrator's] deranged and motiveless attack, apparently the worst mass killing by a single assailant in recent American history, is so unlikely to occur within the setting of modern life that a reasonably prudent business enterprise would not consider its occurrence in attempting to satisfy its general obligation to protect business invitees from reasonably foreseeable criminal conduct.

*Id.* at 509-10 (footnotes omitted).

¶ 24      The federal district court in *Axelrod* had this to say:

I do not disagree at all with the holding in the *Lopez* case. But what was "so unlikely to occur within the setting of modern life" as to be unforeseeable in 1984 was not necessarily so unlikely by 2012. Cinemark itself acknowledges in its reply brief some of the grim history of mass shootings and killings that have occurred in more recent times. . . . If one Googles "mass shooting incidents" one finds dozens of lists of the major incidents. . . . These incidents occurred in schools, businesses, military bases, shopping malls, a supermarket, on a train, in an immigration center and, as we now know, in a theater.

*Axelrod*, 65 F. Supp. 3d at 1099.

¶ 25     The court in *Axelrod* was not suggesting Cinemark should have known of the danger to its patrons on July 20, 2012, nor are we suggesting PPRM should have known of the danger to its invitees on November 27, 2015. We are simply applying the standard of review required in summary judgment cases and concluding there are issues of material fact that must be resolved by a jury.

¶ 26     We recognize that almost two years after the federal district court in *Axelrod* denied Cinemark's first motion for summary judgment, the same judge granted Cinemark's second motion for summary judgment on different grounds. *Nowlan v. Cinemark*

11

*Holdings, Inc.*, No. 12-CV-02517-RBJ-MEH, 2016 WL 4092468, at *3 (D. Colo. June 24, 2016). The federal district court in *Nowlan* relied on two earlier rulings by federal colleagues. The first of these rulings arose from the 2001 Columbine High School shootings. The federal district court there dismissed lawsuits against the Jefferson County Sheriff's Department, *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1133 (D. Colo. 2001), and the organizers of a gun show where the perpetrators had purchased a gun, *Ireland v. Jefferson Cty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1231-32 (D. Colo. 2002), concluding that the shooters' actions in those cases "were the predominant, if not sole, cause" of the injuries, *id.* at 1232. In the second ruling, *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1228 (D. Colo. 2015), the plaintiffs sued gun shops where the perpetrator had purchased ammunition and other equipment that he used in the mass shooting at the Cinemark theatre. The federal district court dismissed the negligence claim, holding that the defendants' sales of ammunition and other items to the shooter did not proximately cause the plaintiffs' daughter's death. *Id.*

¶ 27 Relying on these precedents and on the holding in *Smith v. State Compensation Insurance Fund*, 749 P.2d 462, 464 (Colo. App.

12

1987), the court in *Nowlan* granted Cinemark's second motion for summary judgment, reasoning as follows:

> One factor "may have such a predominant effect" in causing the [harm] "as to make the effect of [another factor] insignificant and, therefore, to prevent it from being a substantial factor." *Smith v. State Compensation Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987). While proximate cause is typically a question of fact reserved to the jury, the Court may conclude, as a matter of law, that such a predominant cause exists, and that there can be no other substantial factors.
>
> . . . .
>
> The Court concludes that a reasonable jury could not plausibly find that Cinemark's actions or inactions were a substantial factor in causing this tragedy. Therefore, as a matter of law, defendants' conduct was not a proximate cause of plaintiffs' injuries.

*Nowlan*, 2016 WL 4092468, at *2-3.

¶ 28    The dissenting opinion in this case also relies on *Smith* as well as *Hook v. Lakeside Park Co.*, 142 Colo. 277, 351 P.2d 261 (1960). However, we reach a different conclusion for two reasons.

¶ 29    First, neither *Hook* nor *Smith* addressed the Premises Liability Act, and neither did the federal cases relied on by the federal district court in *Nowlan*.

13

¶ 30    Second, we are not persuaded that the *Smith* analysis of

proximate cause applies to the circumstances presented in this

case.  Indeed, we conclude that the 1960 decision in *Hook* and the

1987 decision in *Smith* do not compel, or even suggest, that a

summary judgment be granted for PPRM in this case.

¶ 31    In *Smith*, a widow filed an action seeking damages for wrongful

death against a workers' compensation insurer and its agent after

her husband was injured in a work-related accident.  749 P.2d at

463.  He received workmen's compensation benefits and was

entitled to vocational rehabilitation, but due to the defendants'

delay in approving his rehabilitation plan, the job initially awaiting

husband was no longer available.  *Id.*  Husband later died when he

lost control of his motorcycle while driving under the influence of

alcohol.  *Id.*  His widow maintained that the defendants' wrongful

handling of her husband's vocational rehabilitation plan resulted in

his anger and depression that manifested itself in his drinking

alcohol.  *Id.*  Her theory of the case was that, if the defendants had

approved her husband's vocational rehabilitation plan, he would

not have been drinking on the night of the accident.  *Id.*  She

contended there was a causal connection between defendants'

14

wrongful delay in approving her husband's vocational rehabilitation plan and his fatal motorcycle accident. *Id.* at 463-64.

¶ 32     A division of the court of appeals rejected her contention, observing that a finding of negligence does not create liability by a defendant that caused the plaintiff's injury and that "causation is ordinarily a question for the jury, but if, as in this case, facts are undisputed and reasonable minds could draw but one inference from them, causation is a question of law for the court." *Id.* at 464. The *Smith* division added:

> [D]ecedent's death was occasioned by an independent, intervening cause — the motorcycle accident — which could not have reasonably been foreseen to occur as a result of the wrongful delay in approving his vocational rehabilitation plan.
>
> . . . .
>
> Here, several events may have brought about the harm to decedent. Under such circumstances, if an event other than the defendants' negligence appears predominant, the defendants' negligence cannot be considered a substantial factor. *See Restatement [(Second) of Torts]* § 433 (Comment to Clause (a)) [Am. Law Inst. 1965] . . . .

*Id.*

¶ 33    The Restatement does not define "predominant effect."  It provides guidance in determining whether a defendant's conduct was a substantial factor.  Considerations include the number of contributing factors; the extent of the effect each factor has in producing the harm; and "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible."  Restatement (Second) of Torts § 433(b).  However, these are factual issues that must be decided by a jury.  *See Build It & They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011) (concluding the defendant may be liable for injuries caused by criminal acts caused by third parties so long as the injuries were foreseeable); *Reigel*, 292 P.3d at 985 ("Where some events unrelated to the defendant's conduct may also have contributed to bringing about the claimed injury, the plaintiff must show that the defendant's alleged negligence was a substantial factor in producing the injury.").

¶ 34    *Hook* likewise offers us no guidance in resolving this case. There, a patron sustained severe back injuries after she purchased

16

a 15 cent ticket and boarded an amusement ride called the Loop-O-Plane at the Lakeside Amusement Park, which the court then viewed as "an inherently dangerous" activity. *Id.* at 290, 351 P.2d at 269; *see Pizza v. Wolf Creek Ski Dev. Corp.*, 711 P.2d 671, 683 (Colo. 1985) (analogous to selling explosive gases and supplying electricity).

¶ 35     The plaintiff in *Hook* maintained that the attendant failed properly to fasten a leather strap on her that would have kept her tight against the seat and presumably would have prevented her injury. 142 Colo. at 280, 351 P.2d at 264. The trial court rejected her contention that she had presented a prima facie case at trial and dismissed it. *Id.* On appeal, a divided supreme court affirmed the judgment, concluding that the plaintiff's evidence was vague and did not show the leather strap was actually loose. *Id.* at 283, 351 P.2d at 265. On the contrary, the court concluded that the plaintiff showed a "mere possibility that a relationship existed between the loose strap and plaintiff's body movements." *Id.* The court stated:

> From the fact that the strap was not tight we are asked to infer that a force was produced which caused plaintiff to lose her grip on the

> iron bar.  We are asked to indulge a further inference that this in turn produced her injuries.  There is not, however, a sufficient factual basis to enable deduction to the conclusion which she urges.

*Id.* at 286, 351 P.2d at 267.

¶ 36     The court further concluded that the plaintiff had assumed the risk by voluntarily undertaking to ride on "a hazard," *id.* at 269, 351 P.2d at 268, and that there was insufficient evidence of causation because

> evidence was available which could have shed light on the functions of the instrumentality in the present case on possible negligence of the defendant.  For reasons of her own, however, the plaintiff chose to not call the operator of the Loop-O-Plane or any other witness who could enlighten the court concerning its functions.  In view of the election of the plaintiff to proceed in this fashion w[e] are constrained to evaluate the case in the light of the evidence presented and the inferences which reasonably flow from such evidence.  So tested, *it seems clear that the plaintiff's evidence left the important aspects of her case to surmise and speculation.*

*Id.* at 287, 351 P.2d at 267 (emphasis added).

¶ 37     The Colorado Supreme Court has stated that foreseeability is inherent in the determination of whether a landowner should have known a particular danger existed.  In *Taco Bell, Inc. v. Lannon*, 744

18

P.2d 43 (Colo. 1987), the court addressed whether a duty of care existed and the foreseeability of a risk to individuals on a landowner's property. The court stated:

> To establish that an incident is foreseeable, it is not necessary that an owner or occupier of land held open for business purposes be able to ascertain precisely when or how an incident will occur. Rather, foreseeability *"includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct."* . . . *Simply because something has not yet happened does not mean that its happening is not foreseeable.* Instead, foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances.

*Id.* at 48 (emphasis added) (citation omitted).

¶ 38      The decision in *Taco Bell* was announced before the enactment of the CPLA, but we presume the legislature acted with full knowledge of relevant judicial precedent on the subject, *Pierson*, 48 P.3d at 1219, and *Taco Bell* has been repeatedly cited with approval since the enactment of the CPLA.

¶ 39      In *Lopez v. Trujillo*, 2016 COA 53, ¶¶ 10-12, *aff'd sub nom. Trujillo*, ¶¶ 50-51, a case unsuccessfully alleging liability under the CPLA, the division stated:

> In determining whether the law imposes a duty on a particular defendant, the court should consider many factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987). No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards — whether reasonable persons would recognize a duty and agree that it exists.

*Id.* at ¶ 11.

¶ 40    Here, plaintiffs have presented some evidence that the risk of an active shooter in the PPRM facility in Colorado Springs was known to PPRM. PPRM's evidence showed that (1) abortion providers have experienced a dramatic increase in threats of violence and intimidation in recent years, and the percentage of abortion clinics impacted "had increased dramatically since 2010 from 26.6 [percent] of clinics to 51.9 [percent] of clinics"; (2) the PPFA National Security Team had made active shooter training resources available to its affiliates such as PPRM; (3) PPRM warned new physicians to the organization that "there [was] an inherent risk associated with working here" and offered to provide them with

custom-fitted bullet proof vests; (4) PPRM published an Emergency Procedures Guide addressing emergency procedures that employees should take in the event of an "active shooter-violent center invasion" and conducted active shooter training at PPRM when it opened; (5) PPRM's medical director had received death threats and was identified on threatening websites as being located at the PPRM facility in Colorado Springs; (6) a part-time security guard had been hired at PPRM whose shift ended at 11 a.m., even though abortions were conducted throughout the day; (7) Robert Dear arrived and began his deadly attack at approximately 11:30 a.m.; (8) a September 19, 2015, FBI report warned of attacks on Planned Parenthood facilities; (9) staff at PPRM had raised concerns with management about the lack of security numerous times; and (10) plaintiffs obtained an expert who expressed an opinion in his report that, if the PPRM clinic had perimeter fencing with a gate, a full-time security guard, a steel door instead of a glass door, and electronic lockdown on all interior doors, the assault in this case might have been prevented or its consequences mitigated.

¶ 41    PPRM maintains that the issue of foreseeability was limited to prior, similar crimes occurring at the exact location where the

21

shootings occurred. However, the supreme court observed in *Taco Bell*, 744 P.2d at 48-49, that "foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances." The court added: "We have little difficulty in concluding that armed robberies present a significant risk of injury to persons unfortunate enough to be present when one occurs. Therefore, the plaintiff's injury was foreseeable despite the absence of injuries from the previous armed robberies that had occurred at this particular Taco Bell restaurant." *Id.* The supreme court's reasoning is especially apt when applied to venues such as abortion clinics that are, as plaintiffs observed, "lightning rods for violent protests based on the ideology they represent."

¶ 42 We conclude that plaintiffs presented some evidence suggesting that the risk of an "active shooter" incident in a Planned Parenthood facility like PPRM, especially one that performed abortions, was not unknown. As in *Axelrod*, PPRM also was evaluating its security program and had already employed "active shooter" procedures for its physicians and other employees.

¶ 43 PPRM asserts, and we agree, that landowners are not, and should not be, insurers of the safety of their invitees. But the

22

legislature has determined, by enacting the CPLA, that landowners do have certain responsibilities to their invitees. A jury may determine that PPRM fulfilled those responsibilities. We merely conclude the trial court erred in determining *as a matter of law* that PPRM's "contribution [was] infinitesimal as compared to Robert Dear's shooting spree," and that "a mass shooting at PPRM, involving several weapons and improvised bombs" had such a predominant effect that it prevented PPRM's conduct from becoming a substantial factor, and in granting PPRM's motion for summary judgment on that basis.

## V. Conclusion

¶ 44 The trial court's entry of summary judgment in favor of PPFA is affirmed, but the court's entry of summary judgment in favor of PPRM is reversed and the case is remanded for further proceedings against PPRM. On remand, the trial court should revisit plaintiffs' request for access to videos of the shootings.

JUDGE HARRIS concurs.

JUDGE WEBB concurs in part and dissents in part.

23

JUDGE WEBB, concurring in part and dissenting in part.

¶ 45  Are the actions of a heavily armed fanatic, bent on inflicting mass casualties and willing to die in the process, a predominant cause of the carnage that he wreaks, such that a landowner cannot be liable for failure to have implemented security measures? Because I say "yes," I respectfully dissent from the majority opinion to the extent that it sets aside the summary judgment entered in favor of Rocky Mountain Planned Parenthood, Inc., a/k/a Planned Parenthood of the Rocky Mountains, Inc. (PPRM).

I.  Factual Background, Procedural History, and Standard of Review

¶ 46  The majority opinion accurately sets forth the essential factual background.

¶ 47  The trial court ruled in favor of PPRM as to causation and foreseeability.  The court concluded that "the predominant cause was plainly Robert Dear's actions, not the actions or inactions of PPRM," and that "'a reasonably thoughtful person' would not have predicted that a deranged man would appear at PPRM seeking to commit a mass murder."  Because I agree with the trial court as to causation, I do not address foreseeability, which appears to be the

24

basis for the majority's reversal of the summary judgment in favor of PPRM.

¶ 48    I employ the same de novo standard of review used by the majority.

## II.  The Trial Court Properly Entered Summary Judgment for PPRM Based on Lack of Legal Causation

¶ 49    Plaintiffs challenge the trial court's holding that Dear's actions were the "the predomina[nt] cause" of the injuries and deaths in two ways.  First, the trial court improperly considered Dear's actions when determining that PPRM's conduct was not a substantial factor in causing their injuries.  Second, their expert's report created a dispute of material fact whether PPRM's failure to adopt certain security measures was a substantial factor in causing their losses, thus precluding summary judgment.

¶ 50    The majority accepts the second argument and so does not address the first.  I reject both arguments in turn.

### A.  Law

¶ 51    To prevail under the Premises Liability Act (PLA), section 13-21-115, C.R.S. 2018, a plaintiff must prove that the plaintiff's losses were causally related to the landowner's activity on the

property.  *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 37, *aff'd*, 2015 CO 24.  Normally, "[c]ausation is a question of fact for the jury unless the facts are undisputed and reasonable minds could draw but one inference from them." *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 30.

¶ 52 Where multiple causes contribute to an injury, to show legal causation "the plaintiff must prove that the defendant's conduct was a substantial contributing cause of the injury." *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106, 1112 (Colo. 1987).  Substantial means that

> the defendant's conduct has such an effect in producing the harm as to lead [a] reasonable [person] to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

Restatement (Second) of Torts § 431 (Am. Law Inst. 1965).  "[I]t is not enough that the harm would not have occurred had the actor not been negligent." *Id.* at cmt. a.

26

¶ 53　But not all multiple cause cases can be resolved with a substantial factor analysis. In some such cases, one of several concurrent factors "may have such a predominant effect in bringing [the harm] about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor." *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) (quoting Restatement (Second) of Torts § 433 cmt. on clause (a) (Am. Law Inst. 1965)). And a finding that one cause had a predominant effect precludes the defendant's alleged negligence from becoming the legal cause of the plaintiff's injury. *Id.*[1]

¶ 54　The Restatement does not define "predominant effect," nor does case law from this state or any other jurisdiction that I have found, except for actions interpreting insurance policies, *see In re Estate of Heckman*, 39 P.3d 1228 (Colo. App. 2001) (interpreting meaning of "predominant cause" in accidental death and dismemberment policies). Still, our supreme court has examined the facts of a case and identified a predominant effect that

---

[1] By contrast, a superseding, or intervening cause, is an event that occurs after the defendant's negligent act or omission and relieves the defendant from liability so long as it was not foreseeable. *Estate of Newton v. McNew*, 698 P.2d 835, 837 (Colo. App. 1984).

prevented the defendant's alleged negligence from becoming a substantial factor.[2] *Hook v. Lakeside Park Co.*, 142 Colo. 277, 283, 351 P.2d 261, 266 (1960).

¶ 55    In *Hook*, the plaintiff alleged that the defendant's failure to tightly fasten her safety strap on an amusement park ride caused her head injuries when she was jostled while on the ride. *Id.* Even assuming that failure to properly fasten the safety strap may have contributed to plaintiff's injury, the court held that "at least two factors loom larger as causes" and that these factors — the plaintiff's failure to hold onto a safety bar and the natural

---

[2] Other jurisdictions have also found, as a matter of law, that a predominant effect prevented the defendant's negligence from becoming a substantial factor. *See, e.g., Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 821 (9th Cir. 2002) (Plaintiff laboratory's failure to identify cancer on a pap smear was the "predominant" cause of its loss of business, while the alleged trespass of defendant's journalists was "negligible by comparison."); *Rosen v. Ciba-Geigy Corp.*, 892 F. Supp. 208, 211 (N.D. Ill. 1995) (finding plaintiff's pre-existing coronary artery disease had such a predominant effect in causing his heart attack that it prevented the effects of defendant's smoking cessation patch from becoming a substantial factor), *aff'd*, 78 F.3d 316 (7th Cir. 1996); *Trudgen v. Janusz*, No. 192460, 1998 WL 1991025, at *3 (Mich. Ct. App. 1998) (holding plaintiff's slip and fall from the edge of a boat and unintended head first dive into a shallow lake had the predominant effect of bringing about her injuries and thus defendant's failure to warn her about the lake's depth and his failure to properly secure his boat to the dock were not substantial factors).

movements of the ride — "appear as more predominant or substantial causes than that relied upon by plaintiff." *Id.* at 284, 351 P.2d at 266. Based, in part, on this holding, the court affirmed pretrial dismissal of the case. *Id.* at 290, 351 P.2d at 269.

¶ 56 Citing *Hook*, a division of this court affirmed summary judgment for the defendant where the plaintiff alleged that the defendant's negligent handling of her husband's vocational rehabilitation plan had caused him to experience anger and depression, which led to his drinking and accidental death driving a motorcycle while intoxicated. *Smith*, 749 P.2d at 463. As in *Hook*, the division assumed that even if the defendant's alleged negligence contributed in some way to the husband's death, his choice to ride a motorcycle while intoxicated and while wearing a knee brace that limited his control over the motorcycle appeared "more predominant or substantial than that relied upon by plaintiff. Under these circumstances, the defendants' conduct was insignificant and not a substantial factor in causing decedent's death." *Id.* at 464.

¶ 57 These cases, as well as the Restatement, suggest that in applying "predominant effect," courts are "faced with the task of trying to define what may be indefinable." *People v. Tabron*, 190

29

Colo. 149, 152, 544 P.2d 372, 373 (1976) (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring)). Even without a bright-line test, two judges in cases involving the Aurora theater shooting have held that a mass shooter's actions can be the "predominant cause" of the plaintiffs' injuries. *See Nowlan v. Cinemark Holdings, Inc.*, No. 12-CV-02517-RBJ-MEH, 2016 WL 40924689, at *3 (D. Colo. 2016); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1228 (D. Colo. 2015).

¶ 58     As explained in *Phillips*, 84 F. Supp. 3d at 1228:

> There can be no question that [the shooter's] deliberate, premeditated criminal acts were the predominant cause of plaintiffs' daughter's death. [The shooter] meticulously prepared for his crime, arriving at the theater equipped with multiple firearms, ammunition, and other gear . . . .

The *Nowlan* court agreed and held that even if the movie theater's failure to hire security personnel and equip a back door (through which the shooter brought weapons into the theater) with an alarm may have contributed to the plaintiffs' injuries, the shooter's "premediated and intentional actions were the predominant cause of plaintiffs' losses." 2016 WL 40924689, at *3. I consider this conclusion well reasoned and apply it here.

30

## B. Application

### 1. The Trial Court Properly Considered Dear's Actions

¶ 59     Plaintiffs first argue that the trial court could not even consider Dear's actions because they are "related to" PPRM's failure to deter a mass shooter. For Colorado authority, they rely solely on *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011) ("Where some events *unrelated* to the defendant's conduct may also have contributed to bringing about the claimed injury, the plaintiff must show that the defendant's alleged negligence was a substantial factor in producing the injury.") (emphasis added).

¶ 60     But *Reigel* cites only to our supreme court's language that "[s]ome other event" may be a contributing factor in producing an injury. *N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996). Absent from this language is any restriction that the "other event" must be unrelated to the defendant's alleged negligence.

¶ 61     According to plaintiffs, PPRM's failure to adopt security measures, on its own, could not have produced their losses. Rather, PPRM's nonfeasance created a scenario that, when acted upon by Dear, combined to produce those losses. Thus, Dear's

31

actions were "some other event" that must be weighed in determining whether PPRM's alleged negligence was a substantial factor in contributing to the losses at issue.

¶ 62 Alternatively, plaintiffs argue that "the duty to protect invitees from third party criminal activity would be rendered meaningless if the very danger for which protection is required could be considered the super[s]eding cause of injury." *Davis v. Christian Bhd. Homes of Jackson, Miss., Inc.*, 957 So. 2d 390, 406 (Miss. Ct. App. 2007). This argument misses the mark because identifying a "superseding" or "intervening" cause involves foreseeability, not legal causation. *See Jones v. Caterpillar Tractor Co.*, 701 P.2d 84, 86 (Colo. App. 1984) (intervening cause only relieves the defendant of liability if the intervening cause was not reasonably foreseeable).

¶ 63 Plaintiffs also rely on out-of-state authority suggesting that the proper focus in a premise liability claim is "on the acts and omissions of the landowner, not the individual assailant." *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1054 (Md. Ct. Spec. App. 2011). But in *Troxel*, the defendants argued that the plaintiff could only prove that their negligence in hosting "college nights" at their bar, during which underage patrons were admitted, was the cause

32

of his injuries if he showed that the patrons who assaulted him were underage, drank alcohol at the bar, became intoxicated, and assaulted him because they were intoxicated. *Id.* The court rejected such a narrow test, holding instead that the "[plaintiff] must show that it was more likely than not that [defendants'] conduct was a substantial factor in producing his injuries . . . ." *Id.* As in Colorado, the substantial factor test is used where "two or more independent negligent acts" could have produced the injury. *Id.* at 1055. Thus, by engaging in a substantial factor analysis, the court recognized that the assailant's conduct was a concurrent cause which must be considered.

¶ 64 In sum, under the substantial factor test, the fact finder may consider the defendant's alleged negligence and "some other event" in determining if the defendant's alleged negligence was a substantial factor in producing the plaintiff's injuries. Dear's actions were "some other event" that the trial court could consider because Dear's action and PPRM's inaction combined to produce their injuries. And Dear's actions explain why I also reject plaintiffs' second argument.

## 2. The Trial Court Properly Concluded that Dear's Actions Were the Predominant Cause of the Victims' Injuries

¶ 65 Plaintiffs' expert opined that if the PPRM clinic had perimeter fencing with a gate, a full-time security guard, a steel side door instead of a glass door, and electronic lockdown on all interior doors, Dear's assault might have been prevented or its consequences mitigated. As the majority correctly observes, at least for summary judgment purposes, plaintiffs established a disputed issue of material fact whether the absence of these measures contributed to the deaths and injuries. Yet, I agree with the trial court that, as a matter of law, "a mass shooting at PPRM, involving several weapons and improvised bombs" had such a predominant effect that it prevented PPRM's conduct from becoming a substantial factor.

¶ 66 To begin, the undisputed facts show that Dear's assault was both qualitatively and quantitatively different from the criminal conduct in the cases relied on by plaintiffs. *See Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 43-44 (Colo. 1987) (armed robbery); *Troxel*, 29 A.3d at 1043 (assault); *Davis*, 957 So. 2d at 407 (murder after argument between two men); *McClung v. Delta Square Ltd. P'ship*,

34

937 S.W.2d 891, 893-94 (Tenn. 1996) (kidnapping, rape, and murder). In such crimes, the perpetrators have collateral objectives — economic gain, sexual gratification, or settling a personal score — that would be realized by their criminal conduct. Because these crimes are means to achieve ends, these perpetrators apply a cost/benefit calculus to determine whether the likelihood of achieving their objectives justifies the risk of being detected and apprehended or killed.

¶ 67     By contrast, the undisputed facts show that Dear arrived at the clinic intending to inflict mass casualties and prepared to do so. Like the Aurora theater shooter's conduct as described in *Phillips* and *Nowlan*, Dear assembled an arsenal and chose PPRM as his target. Immediately on arrival, he began firing. He acted without regard to avoiding detection or escaping law enforcement.[3] In other words, the crimes that he committed were the end in themselves, not a means to achieving a collateral objective.

---

[3] After having shot persons in the parking lot, Dear could have returned to his truck and fled. Instead, he shot his way through the side door and entered the clinic, where he shot others. Eventually, he engaged in an hours-long gun battle with police.

¶ 68    Simply but tragically, extra security measures pale in comparison to the conduct of actors bent on inflicting mass casualties who do not employ a rational cost/benefit calculus. And for this reason, weighing what security measures a landowner might adopt to protect against such actors is not bounded by reasonableness. *See* § 13-21-115(3)(c)(I) (An invitee may recover for damages caused by a landowner's "unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known."). After all, should landowners be expected to build fortresses?

¶ 69    When weighing PPRM's alleged negligence against Dear's planned and intentional actions, Dear's fanaticism looms large. He inflicted mass causalities without regard to his own survival. Recall that in addition to the multiple firearms, Dear brought several propane tanks in to the clinic, one of which he tried to detonate by shooting it. Detonation would have made him one of the casualties.

¶ 70    Based on these undisputed facts, I, like the courts in *Phillips* and *Nowlan,* conclude that the actions of this mass shooter had a predominant effect in producing plaintiffs' injuries, thus preventing PPRM's alleged negligence from becoming a substantial factor.

¶ 71    In concluding that factual issues preclude entry of summary judgment, the majority cites *Build It & They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011) (concluding the defendant may be liable for injuries caused by criminal acts caused by third parties so long as the injuries were foreseeable), and *Reigel*, 292 P.3d at 985 ("Where some events unrelated to the defendant's conduct may also have contributed to bringing about the claimed injury, the plaintiff must show that the defendant's alleged negligence was a substantial factor in producing the injury."). But neither the supreme court in *Strauch* nor the division in *Reigel* even mentioned predominant effect. And these opinions do not identify any facts that would have supported a predominant effect argument.

¶ 72    Plaintiffs' assertion that they should have been granted access to videos taken on the day of the shooting does not require a different result. Although the trial court did not grant plaintiffs access to the videos because it found them to be tied up in Dear's criminal case, the facts on which the trial court relied in its predominant effect analysis are undisputed and indisputable. Nor

37

do plaintiffs explain how information on the videos could affect this analysis.

¶ 73    Because I conclude that the trial court properly granted summary judgment based on legal cause, I need not address plaintiffs' contention concerning lack of discovery into threats and crimes at Planned Parenthood clinics in other states.[4]

### III.  Conclusion

¶ 74    I would affirm the trial court's entry of summary judgment in favor of PPRM.

_____

[4] Plaintiffs' briefing on foreseeability discusses *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo. 1987), at length.  However, because this is a PLA case and the events giving rise to the action in *Taco Bell* preceded the PLA by about seven years, I express no opinion on whether the *Taco Bell* analysis applies to a landowner's duty to invitees under the PLA.